Thomas R. Pender, Esq. (*pro hac vice*)
William J. Cremer, Esq. (*pro hac vice*)
CREMER SPINA SHAUGHNESSY JANSEN & SIEGERT, LLC
One North Franklin Street, 10th Floor
Chicago, IL  60601
T: 312.726.3800
F: 312.726.3818
Email: tpender@cremerspina.com; wcremer@cremerspina.com

Michael R. Reynolds, Esq. (Bar No. 100126)
Damon M. Thurston, Esq. (Bar No. 186861)
RANKIN, SHUEY, RANUCCI, MINTZ, LAMPASONA & REYNOLDS
A Professional Corporation
2030 Franklin Street, Sixth Floor
Oakland, CA 94612
T: 510.433.2600
F: 510.433.2699
Email: reynolds@rankinlaw.com; thurston@rankinlaw.com

Attorneys for Defendant, BOBST NORTH AMERICA, INC., formerly known as BOBST GROUP NORTH AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION**

| | |
|---|---|
| MICHAEL HERNANDEZ; and BECKY HERNANDEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>BOBST GROUP NORTH AMERICA, INC.; and DOES 1 to 50,<br><br>Defendants. | **Case No. 1:19-CV-00882-LJO-SKO**<br><br>**BOBST NORTH AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER** |

Defendant, BOBST NORTH AMERICA, INC., (hereinafter referred to as "BOBST NA"), by and through counsel and pursuant to Federal Rules of Civil Procedure 26(c)(1), hereby respectfully request the Court enter an order limiting discovery into "prior incidents that formed the basis for the Complaints produced at HERNANDEZ8092-8216," as requested in Plaintiff's Request for Production No. 11.  In support of this motion, BOBST NA states as follows:

1

**BOBST NORTH AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER**

1.     On April 2, 2019, Plaintiff Michael Hernandez filed a claim in California state court for personal injuries arising out of an incident at his place of work. (See Plaintiff's *Complaint*, attached hereto as **Ex. A**, ¶ 2). Plaintiff alleges a defect in a Martin 924 Flexo-Folder-Gluer such that the machine can "suddenly and without warning energize and the feed roller guard's spacing and strength is inadequate to prevent a hand from being pulled into the machine." (*Id.*). Plaintiff also seeks punitive damages based upon two other incidents allegedly involving machines and mechanisms of injury that are wholly distinguishable from the plaintiff's claim.

2.     In 1998, BOBST NA sold a new Midline 924 Flexo-Folder-Gluer to Pacific Southwest Container. (See BOBST NA's *Answer and Affirmative Defenses*, attached hereto as **Ex. B**, at ¶ 7; Purchase Agreement Produced by BOBST NA Pursuant to Rule 26(a)(1) Initial Disclosures, BNA000081-BNA000126, attached hereto as **Ex. C**). The machine takes sheets of corrugated boards from a "hopper," or feed table and converts them into corrugated cardboard boxes. (See Plaintiff's Deposition, December 4, 2019, attached hereto as **Ex. D**, p. 26). There are side guides on the feed table that are adjusted to various widths to accommodate various sides of boards. (*Id.* at p. 27). Between the side guides, where the stack of corrugated sheets sits on the feed table, there are flute guides. (*Id.* at p. 29). The flute guides were to be positioned at a height so only one sheet of corrugated could enter the machine at a time. (*Id.* at p. 33). The Midline 924 Flexo-Folder-Gluer limits access to the pull rolls between the side guides by maintaining a minimum cardboard height on the feed table, monitored by cells, which block access to the pull rolls. (See Martin 924 Operations Manual, attached hereto as **Ex. E**, at PSC002283)

3.     Starting in approximately 2013, Plaintiff Michael Hernandez worked as a Second Assistant on the subject machine on an intermittent basis. (**Ex. D,** at p. 20). In 2015, he was assigned to work on the subject machine on a permanent basis. (*Id.*). He understood there were moving parts behind the feeder opening and that it was hazardous to put his hand past the guard and into the machine. (*Id.* at p. 37).

4.     Plaintiff alleges that on November 1, 2017, while he was using a Martin 924 Flexo-Folder-Gluer, his right hand was pulled past the guard and into the machine causing him to sustain

crushing and de-gloving injuries to his hand and fingers. (**Ex. A**, at ¶ 2). At the time, his hand was between the two side guides, with no additional corrugated on top of the feed belts. (**Ex. D**, at p. 86, 88-89; see Plaintiff's Statement to Cal/OSHA attached hereto as **Ex. F**). This action of removing stock from between the side guides contravened the as-designed machine guarding.

5. Following the incident, Cal/OSHA inspectors cited Pacific Southwest Container for failing to "ensure the 924 Flexo machine was stopped and de-energized or disengaged prior to servicing activities, resulting in unexpected start-up and serious injury to an employee." (See Cal/OSHA Citation, attached hereto as **Ex. G**). On February 23, 2018, Pacific Southwest Container appealed the citation, citing prior disciplinary action taken by Pacific Southwest Container when the plaintiff violated safety policy and extensive safety policies existing at the time of the accident. (See Letter from Pacific Southwest Container to Cal/OSHA, attached hereto as **Ex. H**). In response, Cal/OSHA issued an amended citation, reducing the penalty to Pacific Southwest Container. (See Amended Cal/OSHA Citation, attached hereto as **Ex. I**). Cal/OSHA did not cite Pacific Southwest Container for a lack of machine guarding nor did Cal/OSHA require Pacific Southwest Container to engage in any modifications of the machine. Pacific Southwest Container did not base its appeal on grounds that the machine itself caused the accident, not company safety policy, and that the machine had been modified. Further, when evaluating if Pacific Southwest Container could pursue BOBST NA for costs it incurred arising out of the plaintiff's injury, it determined that it was the employee and not the machine that was at fault. (See Correspondence Between Pacific Southwest Container and Workers' Compensation Insurance Carrier re: Potential Subrogation Claim, attached hereto as **Ex. J**).

6. The Bobst Group consists of dozens of companies around the world that design, manufacture, and/or sell packaging machinery. (See *Affidavit of Michel Cartier In Support of Motion for Protective Order* attached hereto as **Ex. K**). Products sold under the Bobst Group umbrella range from corrugated cardboard converting type machines that make boxes to laminators that process film and foil to large scale printers for labels. (*Id.*).

1        7.    On January 10, 2020, Plaintiff Michael Hernandez served *Plaintiff Michael*
2  *Hernandez' Requests for Production of Documents to Defendant Bobst North America, Inc.*, attached
3  hereto as **Ex. L**. By agreement of the parties, Plaintiff permitted BOBST NA until February 28,
4  2020, to serve its response. (See February 7, 2020, Email Correspondence Between Counsel,
5  attached hereto as **Ex. M**).

6        8.    On February 28, 2020, BOBST NA timely served *Bobst North America, Inc.'s*
7  *Responses to Plaintiff Michael Hernandez' Requests for Production Of Documents*, attached hereto
8  as **Ex. N**, and produced 204 pages of documents not previously produced with BOBST NA's Rule
9  26(a)(1) initial disclosures. In response to Plaintiff's Request for Production No. 11, BOBST NA
10 objected that "the request calls for the production of documents regarding incidents not substantially
11 similar to the incident in question and is not narrowly tailored to promote the discovery of admissible
12 evidence. Further, this request seeks the production of inadmissible documents protected by the
13 attorney-client privilege and the work-product doctrine and documents related to post-occurrence
14 measures. Further, this request is unduly burdensome and calls for the production of information that
15 is not reasonably accessible and would cause undue burden and cost." BOBST NA also advised
16 Plaintiff that "[t]he production of deposition transcripts would be an undue expense on this defendant
17 but can be obtained by contacting Esquire Deposition Solutions, 800-211-3376, Midwest Reporting,
18 Inc, 574-288-4242, and Stewart Richardson Deposition Services, 800-869-0873."

19       9.    On May 1, 2020, May 13, 2020, June 3, 2020, June 16, 2020, and June 18, 2020,
20 counsel exchanged correspondence in an effort to resolve outstanding discovery disputes without
21 court intervention. (see Correspondence Between Counsel collectively attached hereto as **Ex. O**).
22 In addition, counsel spoke over the phone on June 25, 2020, and July 1, 2020. As part of counsels'
23 efforts, counsel for BOBST NA offered to produce deposition transcripts for 29 witness (a total of
24 34 deposition transcripts), and merely asked that the plaintiff reimburse BOBST NA for 50% of the
25 considerable costs expended in previously obtaining these transcripts. Plaintiff's counsel refused to
26 pay for such documents, and also refused to narrow the scope of materials requested. As of the final

4

**BOBST NORTH AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER**

telephone conference, the parties remain in dispute regarding the allocation of burdens and costs necessary to respond to Plaintiff's Request for Production No. 11.

10. The courts have long held "that the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer Fund, Inc. v. Sanders* (1978) 437 U.S. 340, 358, 98 S. Ct. 2380, 2393, 57 L. Ed. 2d 253; see also *Zubulake v. UBS Warburg LLC* (S.D.N.Y. 2003) 217 F.R.D. 309, 322–23 (articulating the test by which courts have discretion to shift costs of discovery to the requesting party when the costs of production pose an undue burden); *Schweinfurth v. Motorola, Inc*. (N.D. Ohio Sept. 30, 2008, 1:05CV0024) 2008 WL 4449081, at *2; FED. R. CIV. P. 34, 1970 Amendment, Subdivision (a); FED. R. CIV. P. 26(c)(1)(B) (specifically authorizing the courts to allocate the expenses of responding discovery).

11. When considering cost shifting, courts in this circuit rely on the *Zubulake* factors. *Price v. Synapse Group, Inc.* (S.D. Cal., Sept. 12, 2018, No. 16CV1524-BAS(BLM)) 2018 WL 9517276, at *10, citing *U.S. ex rel. Guardiola v. Renown Health* (D. Nev., Aug. 25, 2015, No. 3:12-CV-00295-LRH) 2015 WL 5056726, at *2; *Zubulake* identified the following factors to be considered: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total costs of production, compared to the amount in controversy; (4) the total costs of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. *Price v. Synapse Group, Inc.*, at *10, citing *Couch v. Wan* (E.D. Cal., June 24, 2011, No. 1:08CV1621 LJO DLB) 2011 WL 2551546, at *4.

12. In addition, "a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought

must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery." FED. R. CIV. P. 26(b)(2)(B).

13. Other district courts in this circuit have held that a determination of what is an undue burden or cost is fact specific. *U.S. ex rel. Guardiola v. Renown Health*, 2015 WL 5056726, at *3-4. Further, while the *Zubulake* factors are generally applied only to questions of relevant, but electronically stored information deemed inaccessible due to the storage medium (e.g., backup tapes), courts have not held this to be the exclusive reason to apply the *Zubulake* factors when the requested information is not only costly and burdensome to access, and wholly irrelevant to the cause of action. *See Peskoff v. Faber* (D.D.C. 2007) 244 F.R.D. 54, 62.

14. Plaintiff's Request for Production No. 11 seeks documents and information related to cases not substantially similar to the underlying incident. The incidents involve a variety of different machines that have different size openings for different types of material and allege different mechanisms of injury from that alleged in Plaintiffs' *Complaint*. A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect. *Cooper v. Firestone Tire & Rubber Co*. (1991) 945 F.2d 1103, 1105 (citing *Pau v. Yosemite Park and Curry Co*. (1991) 928 F.2d 880, 889). In *Cooper*, the Court held that evidence of dissimilar incidents was admissible as relevant to discredit an expert who opined that the type of product in question was generally safe; and cautioned that had the expert's opinion been limited to the specific product, dissimilar incidents would not be admissible. *Cooper v. Firestone Tire and Rubber Co.* (1991) 945 F.2d at 1105. Plaintiff's request for production of documents related to wholly dissimilar and irrelevant incidents cannot lead to admissible evidence and must be curtailed.

15. In this case, in order for Plaintiff to deem BOBST NA's response to Plaintiff's Request for Production No. 11 sufficient, Plaintiff has demanded BOBST NA produce copies of 31 deposition transcripts which BOBST NA's counsel procured on its behalf at considerable expense,

1  as outlined in the chart attached to BOBST NA's June 16, 2020, letter.  (See **Ex. O**).  In addition,
2  Plaintiff has demanded BOBST NA and its counsel expend considerable time, effort, and expense
3  searching through electronic document archives, the vast majority of which consists of privileged
4  electronic correspondence, in hopes of finding documents that are potentially responsive to Plaintiff's
5  request.

6      16.    Plaintiff's request also amounts to a fishing expedition that improperly shifts the
7  burden of affirmatively proving the elements of punitive damages claim, that BOBST NA was aware
8  of the potential problem and intentionally or recklessly failed to act, from the Plaintiff to presuming
9  that other lawsuits involving BOBST NA allege claims involving substantially similar machines such
10 that Plaintiff's claim can ultimately be proved and therefore BOBST NA must disprove Plaintiff's
11 claim first.

12     WHEREFORE, BOBST NA respectfully requests this Court order that BOBST NA need not
13 continue in the efforts requested by Plaintiff and that BOBST NA's prior response to Plaintiff's
14 Request for Production No. 11 be deemed sufficient.

15     WHEREFORE, in the alternative, BOBST NA asks that this Court order Plaintiff to
16 compensate BOBST NA for 50% of the costs BOBST NA already incurred in procuring those
17 deposition transcripts that it knows to be non-privileged and potentially responsive to Plaintiff's
18 request, or for such other relief as the Court deems proper.

Respectfully Submitted,

   /s/ Thomas R. Pender
***Attorneys for Defendant***
William J. Cremer, Esq. (Admitted *pro hac vice*)
Thomas R. Pender, Esq. (Admitted *pro hac vice*)
CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT, LLC
One North Franklin, 10th Floor
Chicago, Illinois 60606
Tel: (312) 726-3800
Email: wcremer@cremerspina.com
       tpender@cremerspina.com

Michael R. Reynolds

**BOBST NORTH AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER**

| | |
|---|---|
| 1 | RANKIN, SPROAT, MIRES, BEATY & REYNOLDS |
| 2 | 1970 Broadway, Suite 1150 |
| 3 | Oakland, CA  94612<br>Tel: (510) 465-3922 |
| 4 | Email: reynolds@rankinlaw.com |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BOBST NORTH AMERICA, INC.'S MOTION FOR PROTECTIVE ORDER**