# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HERNANDEZ and BECKY HERNANDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>BOBST GROUP NORTH AMERICA, INC.,<br><br>Defendant.<br>_____/ | Case No. 1:19-cv-00882-NONE-SKO<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER REGARDING REMOTE DEPOSITIONS**<br><br>(Doc. 25) |

This matter is before the Court on Plaintiffs' motion for protective order regarding remote depositions, filed September 2, 2020 (the "Motion"). (Doc. 25.) Plaintiffs and Defendant filed their joint statement directed to the Motion, as required by this Court's Local Rule 251, on September 23, 2020. (Doc. 29.) The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument. The hearing set for September 30, 2020, was therefore vacated. (Doc. 30.)

Having considered the parties' briefing, and for the reasons set forth below, the Motion will be granted.

///

///

## I. BACKGROUND

### A. Factual Background

On June 27, 2019, Plaintiffs Michael Hernandez ("Mr. Hernandez") and Becky Hernandez ("Mrs. Hernandez") (collectively, "Plaintiffs") filed a complaint against Defendant Bobst Group North America, Inc. ("Defendant") for injuries Mr. Hernandez allegedly sustained when his right hand was pulled into, crushed, and de-gloved by a machine that folds and glues carboard boxes—the Martin Midline 924 Flexo-Folder Gluer machine (the "Midline 924")—while he was working for his employer Pacific Southwest Container in November 2017. (*See* Doc. 1-1 ("Compl.") ¶¶ 1, 2.) Plaintiffs allege that the Midline 924 was defectively designed because the feed roller guard did not prevent fingers and gloves from being pulled into the machine. (*See id*. ¶¶ 2, 19.) Defendant sold the Midline 924 to Pacific Southwest Container and serviced it in the years leading up to the November 2017 incident. (*See id*. ¶ 7.) Plaintiffs allege Defendant knew of the machine's defective design because of prior similar injuries, but neither fixed the product nor warned of the danger. (*See id*. ¶ 24–27.) They assert claims for strict products liability, negligence, and loss of consortium against Defendant. (*See id*.)

### B. Procedural Background

On May 13, 2020, to address the national, regional, and local public health emergency posted by the coronavirus (COVID-19) outbreak, the Court entered General Order ("G.O.") 618. G.O. 618 provides that, until further notice, "all courthouses United States District Court for the Eastern District of California shall be closed to the public" and that "[a]ll of the court's civil matters will be decided on the papers, or if the assigned Judge believes a hearing is necessary, the hearing will be by telephone or videoconference," including motion hearings, case management conferences, pretrial conferences and settlement conferences. (E.D. Cal. G.O. 618.)

On June 29, 2020, the parties filed a stipulation to extend their discovery and pretrial deadlines by 90 days due to COVID-19. (*See* Doc. 20.) In support of the stipulation, defense counsel Thomas R. Pender, Esq., submitted a declaration, reporting that the parties were presently engaged in discovery, had exchanged "thousands of pages of documents," and had completed the deposition of five fact witnesses: four occurred "prior to the COVID-19-related shutdowns" and

the fifth "occurred over Zoom." (Doc. 21 ¶ 4.) Mr. Pender averred that while "[t]he parties are continuing to engage in discovery in this matter, [] the same disruptions that COVID-19 has created for the U.S. District Court for the Eastern District of California also severely restrict the ability of the parties . . . to engage in meaningful discovery and resolve this case," noting that "[d]ocuments are less accessible, and witnesses do not feel safe traveling to depositions." (*Id*. ¶ 5.)

The Court granted the parties' stipulation on June 30, 2020, and extended all remaining discovery and pretrial deadlines as requested. (*See* Doc. 22.) The parties' deadline to complete non-expert discovery is currently November 17, 2020. (*See id*.)

The parties are now before the Court on a dispute as to whether, in light of the COVID-19 pandemic, depositions must occur by remote means or can take place in person. (*See* Doc. 25, 29.)

## II.   LEGAL STANDARD

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg. Med. Ctr*., 884 F.3d 1218, 1219 (9th Cir. 2018). Nonetheless, a party from whom discovery is sought may move for a protective order to prevent annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). The burden is on the person seeking the protective order to demonstrate good cause. *U.S. v. $160,066.98 from Bank of America*, 202 F.R.D. 624, 626 (S.D. Cal. 2001). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp*., 307 F.3d 1206, 1210–12 (9th Cir. 2002) (citing *Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 476) (9th Cir. 1992)). District courts possess "wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection." *Grano v. Sodexo Mgmt., Inc*., 355 F.R.D. 411, 414 (S.D. Cal. 2020). Where grounds for a protective order have been established, courts have a variety of options to rectify the situation,

including preventing the discovery or specifying the terms on which the discovery will be conducted. Fed. R. Civ. P. 26(c)(1)(A), (B).

In-person depositions have been standard operating practice,[1] but the Federal Rules of Civil Procedure also provide courts with the authority to order a deposition to take place by telephone or other remote means, if the circumstances so warrant. Fed. R. Civ. P. 30(b)(4). Generally, leave to take depositions by remote means should be granted liberally. *See Kaseberg v. Conaco, LLC*, No. 15-cv-01637-JLS (DHB), 2016 WL 8729927, at *5 (S.D. Cal. Aug. 19, 2016); *Lopez v. CIT Bank, N.A.*, Case No. 15-cv-00759-BLF (HRL), 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015). Analyzing whether to permit remote depositions generally consists of two steps. First, the proponent must advance a legitimate reason for seeking a remote deposition. *Kaseberg*, 2016 WL 8729927, at *5. Second, if that foundational showing is made, then the burden shifts to the opposing party to make a "particularized showing" that conducting the deposition by remote means would be prejudicial. *United States v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 629 (S.D. Cal. 2001) (collecting cases).

Courts possess "wide discretion in determining the manner for taking depositions, including whether they should take place by remote means." *Swenson v. GEICO Cas. Co.*, ––– F.R.D. –––, –––, 2020 WL 4815035, at *5 (D. Nev. Aug. 19, 2020); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (addressing discretion with respect to time and place of depositions). As with the Federal Rules of Civil Procedure more generally, courts are mindful to construe Rule 30(b)(4) in a manner that secures the "just, speedy, and inexpensive determination" of the case. *See United States for use & benefit of Chen v. K.O.O. Constr., Inc.*, 445 F. Supp. 3d 1055, 1056 (S.D. Cal. 2020) (quoting Fed. R. Civ. P. 1).

///

---

[1] More precisely, in-person depositions have been the standard operating practice in ordinary times. As discussed below, "[d]ue to the COVID-19 pandemic, conducting depositions remotely has become the 'new normal.'" *Grupo Petrotemex, S.A. de C.V. v. Polymetrix A.G.*, Case No. 16-cv-2401 (SRN/HB), 2020 WL 4218804, at *2 (D. Minn. July 23, 2020) (quoting *In re Broiler Chicken Antitrust Litig.*, Case No. 16-cv-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020)). *See also Newirth v. Aegis Senior Communities LLC*, Case No. 16-cv-03991-JSW (RMI), 2020 WL 4459120, at *1 (N.D. Cal. May 27, 2020) ("While the court is sympathetic to the challenges facing the legal community during this global pandemic—not unlike the rest of society, attorneys and litigants are adapting to new ways to practice law, including preparing for and conducting depositions remotely.").

4

### III. DISCUSSION

The dispute currently before the Court is whether future depositions must be conducted by remote means, including: Plaintiffs' depositions of four fact witnesses, three of which are located outside of California; Defendant's deposition of Mrs. Hernandez; and expert depositions. Plaintiffs move for a protective order requiring that these depositions be conducted remotely given the health concerns arising out of the current pandemic, as well as the governmental and personal restrictions in place to curtail the spread of the COVID-19 virus, and contends that defense counsel is not in a position to control the conditions of in-person depositions or guarantee the safety of attendees. (*See* Doc. 25, 29.) Defendant urges that the depositions occur in person with appropriate COVID-19-related precautions, asserting that depositions by remote means are disadvantageous because they force counsel to disclose beforehand the exhibits he intends to use at the deposition. (*See* Doc. 29 at 2, 10.)

The Court begins by analyzing whether there are legitimate reasons for Plaintiffs' desire to take depositions remotely that give rise to the need for a protective order. Such legitimate reasons plainly exist. As numerous courts have recognized, "the physical distancing orders related to the current pandemic are a legitimate reason for holding depositions remotely." *Swenson*, 2020 WL 4815035, at *5 (citation omitted)*; see also In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020) (finding pandemic conditions justify a request for conducting depositions remotely and that such reason "transcends" any particular deposition).[2]

While Defendant asserts that in-person depositions can be conducted safely with certain precautions, one need look no further than to the parties' experience with the deposition of non-party Blake Steward, described in the parties' joint statement, to see that such precautions can only do so much to ensure the comfort of the participants. (*See* Doc. 29 at 2–4, 9.) Even though

---

[2] *Manley v. Bellendir*, a case from United States District Court for the District of Kansas relied on by Defendant, is inapposite—and, in fact, supports Plaintiffs' position. That case dealt exclusively with the plaintiff's deposition, not third-party deponents at issue here, and considered the specific concern raised by the plaintiff regarding the attendance of defendant, a first responder, at the deposition. No. 18-CV-1220-EFM-TJJ, 2020 WL 2766508, at *1 (D. Kan. May 28, 2020). After granting the plaintiff's request that the defendant appear remotely at the deposition, despite the safety precautions for in-person attendance outlined by the defendant, the *Manley* court found that the plaintiff's concern was alleviated, and no further protective order, *i.e.*, staying the deposition, was necessary. *Id*. at 3.

Defendant confirmed that the court reporter's office where Mr. Steward's deposition was scheduled would require masks and social distancing, when Mr. Steward appeared at the deposition (with his attorney appearing remotely), he "objected to the crowded room and the lack of safety protocols and left." (*Id*. at 4, 9.)  The deposition was delayed so a remote appearance could be set up from Mr. Steward's office. (*Id*. at 9.)

The experience of Mr. Steward's deposition demonstrates that, despite defense counsel's best efforts, it has no control over third parties' compliance and comfort with COVID-19-related precautions and cannot guarantee the safety of the parties, counsel, deponents, videographers, court reporters, or other attendees.[3]  The safety of participants is particularly at risk when they must travel out of state to attend the deposition, as is the case here.  Indeed, the concern expressed on June 29, 2020 by defense counsel Mr. Pender that "witnesses do not feel safe traveling to depositions" does not appear to have abated, as evidenced by the instant motion.

Plaintiffs having met the initial burden in the inquiry, the issue is whether Defendant has made a particularized showing that conducting the deposition by remote means would be prejudicial.  Defendant fails to meet its burden.  Defense counsel contends that taking a deposition by remote means "prevents him from defending his client to his fullest ability" by "forc[ing] him to disclose the exhibits he intends to use before the deposition begins" (Doc. 29 at 10), but the parties' joint statement demonstrates this concern has been eliminated going forward.  Plaintiffs state that the parties "will not be required [to exchange exhibits beforehand] in the future given the available and prevalent technology of email and screenshare," and have offered to memorialize this understanding in a joint stipulation, which Defendant has refused. (*Id*. at 8.)

Defense counsel's past "technological difficulties" experienced with remote depositions (*see id*. at 8–9) also fail to establish prejudice.  As courts within the Ninth Circuit have observed, "there are numerous resources and training opportunities available throughout the legal community to assist [] counsel in the operation and utilization of the new technology" for remote depositions, so as to mitigate any future difficulty.  *Grano*, 335 F.R.D. at 415.  *See also Swenson,*

---

[3] Mr. Steward is not the only one of the parties' deponents appeared at his deposition remotely: Mr. Hernandez's treating doctors Walter Lin, M.D. and Jorge Barragan, Psy.D. both refused to appear in person at their respective depositions. (*See* Doc. 29 at 7–8.)

2020 WL 4815035, at *5 ("[A]mple resources exist for counsel to prepare themselves to proceed by video to facilitate the smooth operation of a remote deposition."). The Court further finds that conducting depositions by remote means would not result in delay in this case, as courts within the Ninth Circuit, including this one,[4] "routinely highlight remote depositions as an effective and appropriate means to keep cases moving forward notwithstanding pandemic-related restrictions." *Swenson*, 2020 WL 4815035, at *3 (collecting cases). Finally, while remote depositions, like court closures, are not optimal, this Court is disinclined to impose a requirement of personal appearance that it could not currently enforce within the walls of its own courthouse. *See* E.D. Cal. G.O. 618.

### IV.    CONCLUSION AND ORDER

Having shown legitimate reasons for conducting depositions remotely, and in the absence of a particularized showing of prejudice by Defendant, the Court concludes that Plaintiffs have met their burden to support issuance of a protective order. *See* Fed. R. Civ. P. 26(c)(1).

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for protective order (Doc. 25) is GRANTED. All future depositions in this case, including Plaintiffs' depositions of the four remaining fact witnesses, Defendant's deposition of Plaintiff Becky Hernandez, and expert depositions, SHALL be conducted by remote means pursuant to Fed. R. Civ. P. 30(b)(4).[5]

IT IS SO ORDERED.

Dated:   **October 14, 2020**                    /s/ *Sheila K. Oberto*
                                                 UNITED STATES MAGISTRATE JUDGE

---

[4] *Christensen v. Goodman Distrib. Inc*., Case No. 2:18-cv-02776-MCE-KJN, 2020 WL 4042938, at *5 n.3 (E.D. Cal. July 17, 2020) ("The parties are also informed that, given the current Covid-19 Pandemic, the court's strong preference is to allow depositions to be taken remotely.").

[5] Any party may seek to vacate or modify this protective order due to a change in circumstances and for good cause shown. *See Tumbling v. Merced Irr. Dist*., No. 1:08cv1801 LJO DLB, 2010 WL 1131172, at *2 (E.D. Cal. Mar. 24, 2010).